CO-JO, INC v STRAND

Docket Nos. 192190, 197209. Submitted September 2, 1997, at Detroit. Decided October 21, 1997, at 9:20 A.M. Leave to appeal sought.

Co-Jo, Inc., and others brought an action in the Genesee Circuit Court against Dale Strand and Pete's Plumbing & Heating, Inc., seeking damages for losses sustained when a building in which three of the plaintiffs operated a restaurant and for which the remaining plaintiff provided fire insurance was damaged in a fire that started while Strand, a plumber employed by Pete's Plumbing & Heating, was using a torch to repair a water leak. The court, Duncan M. Beagle, J., granted summary disposition for the defendants with respect to the plaintiffs' claim of breach of express or implied warranty. The plaintiffs' claim of negligence was submitted to a jury with eight members pursuant to a stipulation by the parties that agreement by seven jurors would constitute a valid verdict. The jury, by a vote of seven to one, returned a verdict of no cause of action. The court entered separate judgments for the defendants consistent with the verdict. After the plaintiffs appealed the judgments, the trial court, on motion by the defendants, awarded the defendants costs and attorney fees. The plaintiffs appealed from the judgments as of right (Docket No. 192190) and appealed the award of costs and attorney fees by leave granted (Docket No. 197209). The appeals were consolidated.

The Court of Appeals held:

1. The trial court did not abuse its discretion in not allowing into evidence a statement Strand had made to an attorney retained by the liability insurer of Pete's Plumbing & Heating. The statement is subject to the attorney-client privilege, and the privilege was not waived by any action or inaction on the part of Strand or when the defendants complied with a trial court order to disclose the statement to the court in its effort to determine whether the statement was subject to the privilege.

2. The trial court properly granted summary disposition of the claim of breach of express or implied warranty in view of the plaintiffs' failure to cite any authority to support the proposition that negligent performance under a contract also constitutes a breach of an express or implied warranty.

3. The trial court did not abuse its discretion in not allowing the plaintiffs to introduce into evidence regulations promulgated under the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.*, in establishing that the defendants breached their duty of care. The use of violations of MIOSHA regulations to establish an employee's liability to a third-party plaintiff for property damage under a theory of negligence would be beyond the purpose for which the Legislature enacted the MIOSHA.

4. The trial court did not abuse its discretion in allowing a fireman who witnessed the fire but was not on duty at the time of the fire to offer his opinion regarding the speed at which the building burned. This witness did not have to be qualified as an expert. His opinion was admitted into evidence as opinion testimony of a lay witness, was general in nature, and was not technical or scientific in nature.

5. The fact that the seven jurors who decided that defendant Strand was not liable for negligence did not agree on each element of the cause of action does not render the verdict improper. Agreement by seven jurors with respect to the issue of liability, as stipulated by the parties, constituted a valid verdict.

6. The trial court's award of costs and attorney fees to the defendants must be reversed without prejudice to the defendants' right to renew their motion for such an award. Once the plaintiffs filed their appeal from the judgments, which expressed no intent to grant costs and attorney fees, the trial court was without jurisdiction to award costs and attorney fees.

Affirmed in part and reversed in part.

1. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS.

The purpose of the attorney-client privilege is to permit a client to confide in an attorney, knowing that the communications are safe from disclosure; the privilege attaches only to confidential communications made by the client to the attorney that are for the purpose of obtaining legal advice.

2. NEGLIGENCE — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH REGULATIONS — EMPLOYEE LIABILITY FOR NEGLIGENCE.

Violations of regulations promulgated pursuant to the Michigan Occupational Safety and Health Act may not be used to establish an employee's liability to a third-party plaintiff for property damage under a theory of negligence (MCL 408.1001 *et seq.*; MSA 17.50[1] *et seq.*).

3. EVIDENCE — OPINION TESTIMONY BY LAY WITNESSES.

    Opinion testimony from a lay witness is permitted where it is rationally based on the witness' perception of an incident and where it is helpful to a clear understanding of the testimony or relevant to the determination of a fact in issue (MRE 701).

4. JUDGMENTS — APPEAL — AMENDMENTS.

    Once a claim of appeal is filed in the Court of Appeals, the trial court may not amend or set aside the judgment or order appealed from except pursuant to an order of the Court of Appeals, by a stipulation of the parties, or as otherwise provided by law (MCR 7.208[A]).

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the plaintiffs.

*Dumasius and Spern, P.L.C.* (by *William L. Spern*), for the defendants.

Before: MARKMAN, P.J., and McDONALD and FITZGERALD, JJ.

PER CURIAM. This case involves consolidated appeals. In Docket No. 192190, plaintiffs appeal as of right the jury verdict of no cause of action in this negligence action. In Docket No. 197209, plaintiffs appeal by leave granted the order awarding costs and attorney fees to defendants. We affirm in part and reverse in part.

Plaintiffs Co-Jo, Inc., So-Bo, Inc., and CC & Company, Inc., collectively referred to herein as Co-Jo, operated a Ponderosa Restaurant. The restaurant was insured against fire loss by plaintiff St. Paul Fire and Marine Insurance Company. On December 26, 1990, an employee of the restaurant observed water leaking from a pipe located above the ceiling tiles in the kitchen. The restaurant manager contacted defendant Pete's Plumbing & Heating, Inc., and defendant Dale Strand, an employee of Pete's, was sent out to make

the necessary repairs. Strand was working on the pipe with a propane torch, and some insulation near the pipe caught fire. The fire spread quickly through the attic of the building, causing approximately $800,000 in losses, for which Co-Jo was reimbursed $666,469 under the fire insurance policy with St. Paul.

On June 12, 1992, plaintiffs filed suit against defendants to recover for their losses from the fire. Plaintiffs asserted a claim that the fire was caused by Strand's negligence and a derivative claim against Pete's on the theory of respondeat superior. Plaintiffs also asserted a claim for negligence against Pete's and a claim for breach of warranty against both Pete's and Strand.

At trial, plaintiffs' theory of the case was that Strand's negligent use of the torch in repairing the pipe caused the fire. Defendants asserted that the fire ignited instantaneously because of defective insulation materials in the attic, excessive grease build-up from the kitchen, or a natural gas leak. Using a special verdict form, seven of the eight jurors found that Strand was negligent.[1] However, seven of the eight jurors found that Strand's negligence was not the proximate cause of the fire. All eight jurors found that Pete's was not negligent and that Co-Jo was not comparatively negligent. Separate judgments of no cause of action against Strand and Pete's were entered, and plaintiffs' motion for a new trial was denied.

---

[1] Use of the term "negligent" in the special verdict form does not equate with the cause of action for negligence. Rather, the term apparently was meant to encompass the blameworthiness of Strand's conduct. See *Goodyear Tire & Rubber Co v Co-Jo, Inc*, unpublished opinion per curiam of the Court of Appeals, issued September 23, 1997 (Docket No. 192876).

I

Plaintiffs argue that the trial court erred in denying a motion to admit a statement made by Strand on the ground that the statement was privileged as an attorney-client communication.

The purpose of the attorney-client privilege is to permit a client to confide in the client's counselor, knowing that the communications are safe from disclosure. *US Fire Ins Co v Citizens Ins Co of America*, 156 Mich App 588, 592; 402 NW2d 11 (1986). The privilege attaches only to confidential communications made by the client to its adviser that are for the purpose of obtaining legal advice. *Fruehauf Trailer Corp v Hagelthorn*, 208 Mich App 447, 450; 528 NW2d 778 (1995).

Here, attorney William Spern was retained by Westfield Insurance Company, the liability insurer for Pete's, to represent Pete's and Strand in any potential action arising out of the fire. Spern clearly stated that he obtained the statement from Strand pursuant to his representation in order to prepare to defend against any possible claim. Spern also stated that he informed Strand that he was retained by the insurer as his attorney and that the statement was pursuant to that representation. Strand had little or no recollection of the meeting or the nature of Spern's role. Strand testified that he thought he was instructed by Pete's to meet with Spern regarding the fire and that he was probably told that Spern was an attorney for Westfield.

Spern's statements support the trial court's conclusion that Strand's statement was intended as a confidential communication to Spern for the purpose of rendering legal advice in the future. Strand's failure to

recall any details of the meeting provides little evidence with respect to his understanding of his relationship with Spern at the time of the statement. Thus, although little evidence was presented from which the trial court made its determination, we cannot conclude that the trial court abused its discretion in finding that the statement was privileged as the product of an attorney-client relationship. *Dacon v Transue*, 441 Mich 315, 329; 490 NW2d 369 (1992).

Plaintiffs also argue, however, that any privilege was waived when Strand mentioned the statement during his trial testimony. We disagree. Strand's comment was inadvertent and simply an attempt to answer counsel's questions with respect to inconsistencies between his trial and deposition testimony. Strand did not divulge any content of the statement and there is no evidence to suggest an intent to waive the privilege or a lack of intent to preserve the privilege. *Sterling v Keidan*, 162 Mich App 88, 96; 412 NW2d 255 (1987).

Plaintiffs additionally argue that any privilege was waived when defendants turned the statement over to plaintiffs. Again, we disagree. Defendants did not voluntarily disclose the statement to plaintiffs. Rather, it was disclosed only upon order of the court with the understanding that it would be used only to assist the court in answering the question whether the statement was privileged.[2] Such disclosure does not constitute a waiver by Strand of the privilege with

---

[2] The lower court apparently ordered defendants to disclose the statement to plaintiffs to facilitate an evidentiary hearing concerning the inconsistencies between the statement and Strand's subsequent testimony. It is not clear why the court determined that such a hearing was necessary since the substance of the statement is irrelevant to the issue whether the statement was privileged.

respect to the statement being introduced at trial. *Id.* 93-94.

## II

Plaintiffs brought a claim of breach of implied or express warranty, alleging that Strand's negligent performance of plumbing services constituted a breach of an express or implied warranty to perform services free from defects. The trial court granted summary disposition of the claim in favor of defendants. Plaintiffs argue that summary disposition was improper in light of *Nash v Sears, Roebuck & Co*, 383 Mich 136; 174 NW2d 818 (1970). In *Nash*, the Court noted that in every contract there is an implied "duty to perform it skillfully, carefully, diligently, and in a workmanlike manner." *Id.* at 142. Where a party to a contract fails to comply with the implied duty to perform in a workmanlike manner, the other party may be entitled to damages resulting from the deficient performance. *Id.* at 143. This duty has been further explained as requiring the contracting party to perform with reasonable care, thus providing the basis for a negligence claim when a contracting party fails to live up to that duty. *Williams v Polgar*, 391 Mich 6, 18-19; 215 NW2d 149 (1974). Accordingly, the Supreme Court has recognized that "the contract merely creates the state of things which furnishes the occasion of the tort." *Id.* at 19. Hence, the Court has indicated that negligent performance under a contract constitutes a tort as well as a breach of contract. *Id.* at 19. Plaintiff has not cited any authority, however, in support of a finding that negligent performance under a contract would also constitute a breach of an implied or express warranty, and our research has unveiled

none.[3] Hence, the trial court properly granted summary disposition of this claim in favor of defendants.

### III

Plaintiffs maintain that the trial court erred in granting defendants' motion in limine to prevent plaintiffs from introducing provisions of the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.*, to establish that defendants breached their duty of care.

MIOSHA regulations were enacted to promote safety in the workplace and, therefore, employees are required to follow certain safety regulations. *Zalut v Andersen & Associates, Inc*, 186 Mich App 229, 235; 463 NW2d 236 (1990). The Supreme Court has held in cases involving personal injury to a plaintiff-employee that violations of safety regulations are evidence of negligence, *Beals v Walker*, 416 Mich 469, 481; 331 NW2d 700 (1982), and this Court has held that MIOSHA regulations are relevant evidence on the issue of an employee's comparative negligence. *Zalut, supra* at 235.

The present plaintiffs' claims are distinguishable, however, because they seek to recover for damage to property. Thus, the question is whether MIOSHA regulations can be introduced to establish negligence of an employee resulting in property damage to a third-party plaintiff. While *Zalut* can be interpreted as establishing a general rule that a violation of MIOSHA

---

[3] Plaintiffs will suffer no harm, however, as a result of our holding. Strand's alleged breach of the duty to provide ordinary care in performing the repair service formed the basis of plaintiffs' negligence claim, which the jury found to be without merit. This same claim could have been identified as a breach of contract claim.

regulations can be used as evidence of negligence, such an interpretation appears to go beyond the purpose of creating a safe workplace for employees. The application of the MIOSHA regulations in the manner suggested by plaintiffs would establish the regulations as the measure of the standard of care owed by an independent contractor to its customer in performing its services. Clearly, the MIOSHA was not intended to fulfill this purpose.[4] Hence, we conclude that the MIOSHA regulations are of no relevance to plaintiffs' negligence claims against defendant. The trial court properly refused to admit evidence of defendants' violation of certain MIOSHA regulations for the purpose of proving defendants' negligent performance.

IV

Plaintiffs contend that the opinion testimony of off-duty fireman Michael Wright regarding the speed at which the building burned was improperly admitted because Wright was not qualified as an expert witness. Opinion testimony from a lay witness is permitted where it is rationally based on the witness' perception of the incident and where it is helpful to a clear understanding of his testimony or relevant to the determination of a fact in issue. MRE 701; *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 455; 540 NW2d 696 (1995). In *Richardson*, this Court found that the trial court properly allowed two police officers to offer their lay opinions of the cause of a car crash based on their observation of the scene of the accident and photographs. The Court held that such testimony was not expert opinion testimony, but

---

[4] See 1974 PA 154, which established the MIOSHA and specifies the legislative purpose the act was to accomplish.

rather reliable conclusions that could be made by people and not overly dependent on scientific, technical, or specialized knowledge. *Id.* at 455-456.

Here, Wright's conclusions were based on observation of the fire for over thirty minutes. The opinion testimony was limited to describing the fire in relation to other building fires Wright had witnessed. The reliability of his conclusions was premised on his extensive experience in observing other building fires and investigating their causes. The testimony was of a general nature, without any reference to technical comparison or scientific analysis. Moreover, the trial court went to great lengths to avoid the admission of any evidence that could be construed as technical or scientific analysis. We conclude that the trial court did not abuse its discretion in allowing Wright to offer his opinion regarding the speed and intensity of the fire.

V

Plaintiffs contend that the jury verdict must be set aside because the same seven jurors did not agree on the essential elements of the negligence claim against Strand.

In civil cases, a trial by jury is by a jury of six, and agreement of five jurors constitutes a valid verdict. MCL 600.1352; MSA 27A.1352. Here, rather than dismissing two jurors before deliberations, the parties agreed to submit the case to all eight jurors and stipulated that the agreement of seven jurors would constitute a valid verdict. There is no dispute that a total of seven jurors agreed that Strand was not liable for

plaintiffs' damages.[5] Plaintiffs argue that the jury verdict was improper because the *same* seven jurors did not agree on each element of the cause of action. We disagree. The parties stipulated that a decision of seven of the eight jurors would constitute a valid verdict. The proper focus of this stipulation is the issue of liability, not the individual elements that comprise a finding regarding the issue of liability. Because seven jurors agreed that Strand was not liable for plaintiffs' damages, we find that the verdict was proper.

VI

For their last argument, plaintiffs maintain that the filing of their claim of appeal of the judgment divested the trial court of jurisdiction to award attorney fees and costs to defendants.

Once a claim of appeal is filed, the trial court may not amend or set aside the judgment or order appealed from except pursuant to an order of this Court, by a stipulation of the parties, or as otherwise provided by law. MCR 7.208(A); *Admiral Ins Co v Columbia Casualty Ins Co*, 194 Mich App 300, 314; 486 NW2d 351 (1992).

Here, the final judgment of no cause of action was entered on January 8, 1996. Plaintiffs filed their claim of appeal from the judgment on January 23, 1996. On January 30, 1996, defendants filed a motion seeking costs and attorney fees pursuant to MCR 2.405. On

---

[5] A total of seven jurors agreed that Strand was negligent (with juror number six disagreeing) and a total of seven jurors agreed that Strand's negligence was *not* the proximate cause of the fire (with juror number eight disagreeing). In other words, only one juror (juror number eight) found both negligence and proximate cause.

May 16, 1996, the trial court entered an order awarding defendants costs of $18,103.25 and attorney fees of $45,000. Because the judgment from which the appeal was taken did not express an intention to grant costs and attorney fees, *Admiral, supra* at 314, the trial court was without jurisdiction to award costs and attorney fees following plaintiffs' claim of appeal. Consequently, we reverse the trial court's order granting defendants costs and attorney fees without prejudice to defendants' right to renew their motion for attorney fees. *Wilson v General Motors Corp,* 183 Mich App 21, 41; 454 NW2d 405 (1990).

Affirmed in part and reversed in part.